

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**MICHAEL LANELL EASLEY, JR.,**

    Petitioner,

v.                                      CRIMINAL ACTION NO. 2:16-cr-44

**UNITED STATES OF AMERICA,**

    Respondent.

*MEMORANDUM OPINION AND ORDER*

Before the Court is Petitioner Michael Lanell Easley Jr.'s ("Petitioner") Motion for Compassionate Release. ECF Nos. 33, 38. For the reasons stated below, Petitioner's Motion is **DENIED**.

### I. FACTUAL AND PROCEDURAL HISTORY

On March 24, 2016, Petitioner was named in an eight-count criminal indictment for conduct associated with distribution of heroin and firearms in the Eastern District of Virginia. ECF No. 3. Prior to the indictment, undercover DEA agents arranged several purchases of varied quantities of heroin from Petitioner. ECF No. 37 at 4-6. On one such occasion, DEA agents apprehended Petitioner and placed him on the ground. *Id.* When he was rolled on his back, the arresting agents realized that Petitioner recently consumed a large dose of heroin. *Id.* In an effort to save Petitioner's life, agents called for an ambulance and rushed Petitioner to the hospital. *Id.*

On November 23, 2015, a search warrant was executed at Petitioner's residence. *Id.* Agents recovered a large quantity of heroin, a Taurus PT 1911 .45 semi-automatic handgun, eight .45 caliber rounds of ammunition, and an additional unknown amount of ammunition. *Id.* Also recovered were digital scales and strainers commonly used to prepare heroin, 201.38 grams of

marijuana, and 41.68 grams of heroin. *Id.* In total, Petitioner was accountable for 63.98 grams of heroin, 11.01 grams of fentanyl, and 201.38 grams of marijuana. *Id.*

On May 25, 2016, Petitioner pled guilty to Counts One and Seven of the indictment, charging Petitioner with Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances (Count One), in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and Possession of a Firearm in Furtherance of Drug Trafficking Crimes (Count Seven), in violation of 18 U.S.C. § 924(c)(1)(A). ECF Nos. 18, 19. Petitioner was ultimately sentenced to 60 months on Count One and 60 months on Count Seven, for a total of 120 months to be served consecutively. ECF No. 30.

On December 7, 2020, Petitioner filed a *pro se* Motion for Compassionate Release based upon the ongoing COVID-19 pandemic. ECF No. 33. Thereafter, the Court ordered appropriate responses on March 8, 2021. ECF No. 36. Petitioner's counsel supplemented Petitioner's Motion on April 7, 2021. ECF No. 38. The Government responded in opposition on April 22, 2021. ECF No. 42. Petitioner filed a reply on April 27, 2021. ECF No. 44. Accordingly, this matter is ripe for disposition.

## II. LEGAL STANDARD

### A. The Exhaustion Requirement

A district court may modify a petitioner's sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Federal Bureau of Prisons ("BOP") to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court. *Id.* Courts may; however, waive the exhaustion requirement under exigent circumstances. *Coleman v. United States*, 2020 WL

3039123, at *3–*4 (E.D. Va. June 4, 2020) (discussing the reasons "judicial waiver of the exhaustion requirement is permissible in light of the extraordinary threat certain inmates face from COVID-19").

## B. The Compassionate Release Standard

As amended by the FIRST STEP Act, a court may modify a term of imprisonment upon a motion from the petitioner and after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Such "extraordinary and compelling reasons" were previously described by the United States Sentencing Commission ("Sentencing Commission") in U.S.S.G. §1B1.13, Application Note 1. Before the passage of the FIRST STEP Act, the Sentencing Commission provided that a sentence may be modified in light of the petitioner's medical condition, age, or family circumstances. U.S.S.G. §1B1.13, n. 1 (A)–(C). Additionally, the Sentencing Commission further defined the limits under which a sentence reduction may be given under those justifications. *Id.* The Sentencing Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at n. 1 (D). Use of the "catch-all provision" prior to the FIRST STEP Act was severely restricted because it required approval from the Bureau of Prisons before an individual could petition the district court for relief. *Id.*

However, U.S.S.G. §1B1.13 is now outdated following the passage of the FIRST STEP Act, which allows individuals to petition the district court directly without clearance from the Bureau of Prisons. As such, U.S.S.G. §1B1.13 is merely advisory and does not bind the Court's application of § 3582(c)(1)(A). *McCoy v. United States*, 2020 WL 2738225, at *4 (E.D. Va. May

3

26, 2020), *aff'd*, 981 F.3d 271 (4th Cir. 2020); *see also United States v. Lisi*, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) ("[T]he Court may independently evaluate whether [petitioner] has raised an extraordinary and compelling reason for compassionate release ... [but § 1B1.13's policy statement] remain[s] as helpful guidance to courts...."); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("[T]he Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive").

Additionally, a petitioner's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Instead, the Court may consider a combination of factors, including — but not limited to — those listed in U.S.S.G. §1B1.13, in evaluating a petitioner's request for a sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i).

## III. DISCUSSION

### A. The Exhaustion Issue

On December 21, 2020, Petitioner submitted a request for compassionate release to the Warden of his correctional facility based upon the ongoing COVID-19 pandemic. ECF No. 38 at 3. Petitioner was subsequently denied relief on December 31, 2020. ECF No. 38-1. Accordingly, Petitioner has met the exhaustion requirements under § 3582(c)(1)(A).[1]

### B. Resolution of Petitioner's Request for Compassionate Release

1. *Consideration of the Factors Listed in 18 U.S.C. § 3553(a)*

In its consideration of the factors listed in 18 U.S.C. § 3553(a), the Court notes that Petitioner's offense conduct involved life-threatening unlawful activity. Petitioner sold heroin to

---

[1] Despite Petitioner having met these requirements, this Court has previously held that the exhaustion requirement within § 3582(c)(1)(A) may be waived in the midst of the COVID-19 pandemic. *See supra* Part II.A; *Coleman v. United States*, 2020 WL 3039123, at *3–*4 (E.D. Va. June 4, 2020).

4

undercover agents on at least three occasions. ECF No. 37. Upon his arrest, Petitioner quickly consumed a large amount of heroin in an effort to avoid being caught with the illegal substance. *Id.* In so doing, Petitioner nearly died. *Id.* Moreover, Petitioner has a Criminal History Category of IV and received a two-level enhancement for having maintained a premises for the purpose of manufacturing or distributing controlled substances. *Id.* at 7. Based upon the foregoing, Petitioner's offense conduct strongly implicates the need for a sentence "to reflect the seriousness of the offense...and to provide just punishment." 18 U.S.C. § 3553(a)(2)(A)–(B).

To date, Petitioner has only served just over 50% of his 120-month sentence. ECF No. 38 at 1. The Court recognizes that Petitioner has taken several education courses, has no disciplinary history while in prison, and maintains strong familial support in Portsmouth, VA. ECF No. 38 at 2; ECF No. 38-3. However, after full consideration of the § 3553(a) factors, the Court concludes that the purposes of Petitioner's sentence remain unfulfilled.

2. *Evaluation of "Extraordinary and Compelling Reason"*

In evaluating whether an "extraordinary and compelling reason" for release based upon the COVID-19 pandemic has been established, the Court considers the severity of the ongoing COVID-19 outbreak in federal prisons. *See e.g. Wilson v. Williams*, 2020 WL 2542131, at *1–2 (N.D. Ohio May 19, 2020) (documenting the BOP's ineffective efforts to curtail the spread of the virus within FCI Elkton). In this case, Petitioner is presently incarcerated at FCI Petersburg Medium which houses approximately 1,513 inmates. ECF No. 42 at 14. At this time, FCI Petersburg Medium oversees 288 inmates who were previously diagnosed with COVID-19 and maintains just one current COVID-19 diagnosis. *See COVID19 Inmate Test Information*, BOP, https://www.bop.gov/coronavirus/. As the BOP continues to distribute its allotment of COVID-19

5

vaccines, FCI Petersburg has fully vaccinated 1418 inmates, including Petitioner. *COVID-19 Vaccine Implementation*, BOP, https://www.bop.gov/coronavirus/; ECF Nos. 42 and 44.

Specific to each petitioner, the Court examines the Centers for Disease Control's list of risk factors for severe COVID-19 complications when assessing compassionate release motions during the pandemic. *United States v. Lewellen*, 2020 WL 2615762, at *4 (N.D. Ill. May 22, 2020). Here, Petitioner proffers his weight and race as underlying conditions that may exacerbate a potential COVID-19 infection. ECF No. 38. The CDC does indicate that being obese (BMI > 30 but < 40), "can make you more likely to get severely ill from COVID-19."[2] However, race is not a *medical* condition that increases severe illness in the event of a COVID-19 diagnosis.[3] Despite Petitioner's ailments, the Court is unable to conclude that Petitioner presents an extraordinary and compelling reason to warrant release from prison.

The Court has examined Petitioner's medical records and notes that Petitioner has a BMI of approximately 39. ECF No. 44-1. The Court also recognizes, however, that Petitioner has been fully vaccinated. ECF Nos. 42 and 44. The CDC advises that upon vaccination, "[y]ou can gather indoors with fully vaccinated people without wearing a mask or staying 6 feet apart," and "[y]ou can gather indoors with unvaccinated people of any age from one other household... without masks or staying 6 feet apart."[4] Moreover, "COVID-19 vaccines are effective at preventing COVID-19 disease, especially severe illness and death." *Id.* With this information from the CDC and knowing that Petitioner is fully vaccinated and in an environment in which many of the inmates

---

[2] *People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION (Apr. 29, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html.
[3] *Id.*
[4] *When You've Been Fully Vaccinated*, CENTERS FOR DISEASE CONTROL AND PREVENTION (Apr. 27, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html.

within his facility are also vaccinated (and continue to be vaccinated), the Court cannot conclude that Petitioner's circumstances are so extraordinary as to warrant release from incarceration.

While the world continues to grapple with the pandemic, it is imperative to acknowledge that many persons who are incarcerated suffer from a variety of ailments that may make them susceptible to severe illness from a COVID-19 diagnosis. With the added protection of a COVID-19 vaccine, vaccinated inmates with various comorbidities are now better positioned against a COVID-19 diagnosis than the inmates who were released prior to widespread accessibility to a COVID-19 vaccine. As the Court continues to exercise its discretion in releasing the most vulnerable inmates in light of the pandemic, the Court declines to release inmates who lack a significant showing of potential fatality from a COVID-19 diagnosis, especially those that are fully vaccinated. Based upon the foregoing reasoning, the Court is unable to find an extraordinary and compelling reason for relief after considering the unfulfilled purposes of Petitioner's original sentence.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Motion is **DENIED**. The Clerk is **DIRECTED** to provide a copy of this Order to the Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED.**

Norfolk, Virginia
May /2, 2021

UNITED STATES DISTRICT JUDGE

7